OPINION
Defendant-appellant Glenn Perry appeals from the August 30, 1999, Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE
On February 23, 1994, appellee Carol Perry filed a complaint for divorce against appellant Glenn Perry in the Licking County Court of Common Pleas, Domestic Relations Division. Pursuant to a Judgment Entry Decree of Divorce filed on June 30, 1995, the parties were granted a divorce. The divorce decree stated in paragraph 2.j. as follows: "sustenance spousal support shall be paid by Defendant [appellant] to Plaintiff [appellee] by way of wage withholding or bank account deduction, at the rate of $100.00 per week plus poundage through Licking County Child Support Enforcement Agency for a period of five years commencing with the first month immediately following the filing of this decree of divorce." The divorce decree further provided in paragraph 4.c. that appellant would pay and hold appellee harmless for "any amounts owed to the IRS, including any amounts garnished from Plaintiff's wages or bank accounts as a result of this levy." Appellee, on May 24, 1996, filed a Motion to Show Cause alleging, in part, that appellant had failed to pay spousal support and to pay and hold appellee harmless on the IRS debt, causing the IRS to garnish appellee's wages and bank accounts. As memorialized in a Judgment Entry filed on September 13, 1996, the trial court, in part, declined to hold appellant in contempt for failing to pay spousal support but found appellant in contempt for failing to hold appellee harmless on the IRS debt. The trial court, in such entry, granted appellee a judgment against appellant in the amount of $3,256.32, the amount of appellee's funds seized by the IRS. After appellant failed to purge his contempt in accordance with the terms of the September 13, 1996, entry, appellee, on January 13, 1997, filed a Motion to Enforce the trial court's September 13, 1996, order. Pursuant to an Agreed Judgment Entry filed on April 15, 1997, the parties agreed that appellee's Motion to Enforce would be dismissed but that, if appellant failed to comply with specified terms and conditions, the dismissal could be vacated. Subsequently, the parties entered into an Agreed Entry that was filed on November 17, 1997. The Agreed Entry provided, in part, as follows: The parties hereby agree as follows: "1. Both parties shall participate in discussions with the Internal Revenue Service to construct a payment plan on the debt presently being charged to the Plaintiff arising from the tax liability of Red's Tree Farm." "8. Plaintiff shall produce records from National City Bank documenting the garnishment of her checking account by the IRS. Defendant shall pay any charges for copying and retrieval charged by the bank."
On January 28, 1998, appellant filed a Motion for Contempt against appellee. Appellant, in his motion, specifically requested that appellee be held in contempt for failing to provide appellant with appellee's National City Bank records documenting the garnishment of appellee's account by the IRS and for failing to participate in discussions with the IRS to determine a payment plan regarding the debt owed by Red's Tree Farm. A hearing on appellant's Motion for Contempt was scheduled by the trial court for February 27, 1998. After a motion for a continuance of such hearing was filed by appellee, the trial court continued the hearing until May 7, 1998, pursuant to an entry filed on March 4, 1998. Appellee subsequently filed a second motion for a continuance since, because of surgery, she was unable to resume normal activities until May 11, 1998. As memorialized in an entry filed on May 8, 1998, the trial court, over appellant's objection, granted the motion for a continuance and rescheduled the hearing on appellant's Motion for Contempt for May 26, 1998, at 8:00 a.m. After neither appellant nor his counsel had appeared as of 8:15 a.m. on May 26, 1998, the trial court dismissed appellant's January 28, 1998, Motion for Contempt without prejudice. Thereafter, on June 2, 1998, the Licking County Child Support Enforcement Agency (CSEA) filed a Motion for Contempt seeking an order from the trial court holding appellant in contempt for failing to pay spousal support. The CSEA, in its affidavit, stated that appellant owed a total of $1,316.67 in spousal support as of April 30, 1998. A "Motion for Contempt and for Attorney Fees and Order to Show Cause" was filed by appellant on July 2, 1998. Appellant, in his motion, once again alleged that appellee had failed to provide appellant with her National City Bank records documenting the IRS's garnishment of her checking account and had failed to participate with appellant in discussions with the IRS regarding a payment plan. After he was unable to obtain service on appellee, appellant refiled his Motion for Contempt on July 16, 1998. Thereafter, the trial court scheduled a hearing before a Magistrate on September 29, 1998, on appellant's July 2, 1998, and July 16, 1998, Motions for Contempt and the June 2, 1998, Motion for Contempt filed by the Licking County CSEA. Pursuant to a Magistrate's Order filed on October 9, 1998, the September 29, 1998, hearing was rescheduled to January 25, 1999. The Magistrate, in his order, specifically stated as follows: "The Magistrate is unable to ascertain whether the plaintiff is represented by Ms. Smith as contradictory information has been presented on this point. The plaintiff shall resolve the status of her being represented by Ms. Smith immediately and shall be prepared to proceed at the continued hearing date with or without an attorney. The Magistrate further indicated in his order that no further continuances would be granted. Subsequently, appellant's counsel, with leave of court, withdrew as counsel of record pursuant to an entry filed on December 28, 1998. Pursuant to a Judgment Entry filed on January 19, 1999, the trial court denied appellant's request for court-appointed counsel stating that if appellant wished the court to reconsider such issue, appellant "must first dismiss his [pending] contempt motion since the trial court could not "bifurcate the two pending motions to justify the appointment of counsel." Shortly thereafter, appellant filed a Motion for Continuance of the January 25, 1999, hearing. Appellant, in his motion, indicated that he had contacted a new attorney who agreed to represent him provided that a 30 day continuance of the hearing was granted. Appellant further stated in his motion that "[t]he case history and details are too great to absorb on such short notice (5 days) and additional conflicts with the date are unavoidable on other matters." A Magistrate's Order denying appellant's request for a continuance, which was filed on January 26, 1999, indicated that appellant had been verbally advised of the denial of his request during the early afternoon of January 21, 1999. During the morning of January 25, 1999, appellant, who was represented by new counsel, also made an oral motion for a continuance of the hearing based on the voluminous nature of the case. Such motion was denied by the Magistrate. Thereafter, the hearing before the Magistrate commenced. Pursuant to a Magistrate's Decision filed on February 2, 1999, the Magistrate recommended that the Motion for Contempt filed by the CSEA be granted since there was clear and convincing evidence that appellant was in arrears in his spousal support in the amount of $4,889.68 as of December 31, 1998. The Magistrate further recommended that appellant's Motions for Contempt be granted since there was evidence that appellee had "failed to provide information on her bank account which was allegedly levied by the IRS." However, the Magistrate also found that appellant had "failed to prove by clean (sic) and convincing evidence that the plaintiff failed to participate in negotiations pertaining to the tax debt arising from the parties' operation of Red's Tree Farm." Appellant, with leave of court, filed objections to the Magistrate's Decision on April 1, 1999. Pursuant to an Opinion filed on August 5, 1999, the trial court modified the Magistrate's Decision in part, declining to hold appellee in contempt of the trial court's November 17, 1997, entry requiring appellee to produce her National City Bank records. The trial court, in its August 5, 1999, opinion, stated that "[i]t is ludicrous for the plaintiff to have to continue to expend funds to resolve this [the garnishment] issue when defendant is exclusively liable for the [IRS] debt . . ." A final entry memorializing the trial court's decision was filed on August 30, 1999. It is from the trial court's August 30, 1999, Judgment Entry that appellant prosecutes his appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I
THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO CONTINUE THE HEARING SO THAT COUNSEL COULD PREPARE FOR THE HEARING AND ATTEMPT TO OBTAIN THE DOCUMENTATION OF THE APPELLEE CONCERNING THE ALLEGED GARNISHMENT.
 ASSIGNMENT OF ERROR II
THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO DISMISS APPELLEES [SIC] CONTEMPT MOTION FOR HER FAILURE TO PROVIDE THE DOCUMENTATION CONCERNING THE ALLEGED GARNISHMENT PURSUANT TO THE COURT ORDER OF NOVEMBER 17, 1997, AND HER FAILURE TO PROVIDE DOCUMENTATION OF THE ALLEGED GARNISHMENT.
 ASSIGNMENT OF ERROR III
THE TRIAL COURT ERRED WHEN IT FOUND THE APPELLANT IN CONTEMPT OF COURT FOR FAILING TO PAY SPOUSAL SUPPORT WHEN IT WAS THE APPELLEE'S MISCONDUCT THAT CAUSED THE APPELLANT TO BE UNABLE TO ABIDE BY THE COURT'S ORDER.
 ASSIGNMENT OF ERROR IV
THE TRIAL COURT ERRED WHEN, ON OBJECTIONS, THE JUDGE MODIFIED THE MAGISTRATE'S DECISION BY FINDING THAT THE APPELLEE'S CONDUCT WAS SUFFICIENT TO COMPLY WITH THE COURT'S ORDERS TO PARTICIPATE WITH DISCUSSIONS WITH THE IRS AND THEREBY DISMISSING THE CONTEMPT FINDINGS AGAINST THE APPELLEE.
 I
Appellant, in his first assignment of error, argues that the trial court erred in denying appellant's motion for a continuance of the January 25, 1999, hearing on the Motions for Contempt. We disagree. The grant or denial of a continuance is a matter that is within the broad discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65, syllabus. In order to find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. Upon review of the totality of the circumstances in the case sub judice, we cannot find that the trial court abused its discretion in denying appellant's request for a continuance of the January 25, 1999, hearing. As is stated above, appellant originally filed his Motion for Contempt against appellee on January 28, 1998. Such motion was dismissed by the trial court after neither appellant nor his counsel appeared for the hearing scheduled for May 26, 1998. Thereafter, the CSEA filed a Motion for Contempt against appellant in June of 1998 and appellant refiled his Motion for Contempt in July of the same year. The hearing on the two Motions for Contempt was originally scheduled for September 29, 1998. The Magistrate, in his October 9, 1998, order rescheduling the hearing to January 25, 1999, to allow appellee to resolve the status of her legal representation, specifically stated that "[t]here shall be no further continuances in this matter." Subsequently, pursuant to an entry filed on December 28, 1998, appellant's counsel was granted leave to withdraw as counsel. After his request for court-appointed counsel was denied by the trial court, appellant filed a motion requesting a 30 day continuance of the hearing indicating that an attorney agreed to represent him provided that the continuance was granted and that the "case history and details are too great to absorb on such short notice (5 days) . . ." Such motion was denied by the Magistrate. Thereafter, on the morning of the January 25, 1999, hearing, appellant made an oral motion for continuance, arguing, in part, as follows: "MR. McCOY: Your Honor, at this time I would request a continuance in this case. I understand fully that this case has been continued numerous times, usually at the request of the plaintiff. I was just retained on this case Saturday. As you are very well aware, this case is voluminous. And although I worked the entire weekend to get prepared as much as possible for this hearing today, Mr. Perry will have a less — a much less prepared counsel than he should have in this case. He did everything within his power to seek counsel. His last counsel withdrew from him. At that point in time he requested court-appointed counsel. That was in fact denied because he had a motion pending as well that is very germane to this case and could not withdraw his motion and give up a defense. So he chose to continue with his motion at that point in time and he sought counsel as soon as possible and here we are. But quite honestly with the seriousness of the offense in this case and with the complexity of this case, it is very unfair to Mr. Perry to proceed at this point in time. Thank you, your honor."
Transcript of Proceedings at 4-5. After the Magistrate overruled appellant's motion for a continuance, appellant filed an objection to the denial with the trial court. Pursuant to an Opinion filed on August 5, 1999, the trial court overruled appellant's objection, holding as follows: "The record reflects that the defendant's attorney asked to withdraw pursuant to D.R. Rule 2-110(C)(1)(d) and (e). Subsection (d) attributes the withdrawal due to difficulty with the client's conduct and the client insists the attorney engage in conduct contrary to the judgment of the attorney. Additionally, the attorney's motion to withdraw indicated cooperation so as to not prejudice the defendant. This case has proceeded through various discovery areas and conferences with the Magistrate. It was focused on two very narrow issues; the status of the payment and resolution of the parties' tax lien and the payment of spousal support. That took minimal amount of records to resolve.
If the other issues were complex then defendant had the option simply to ask for a dismissal of those issues and then re-file them at some later date. The defendant chose to proceed with the contempt actions. The Magistrate's Decision not to continue the matter was reasonable and appropriate."
Based on the foregoing facts, we find that the trial court's denial of appellant's request for a continuance of the January 25, 1999, hearing was not arbitrary, unreasonable or unconscionable. By the time of the January, 1999, hearing, the two Motions for Contempt had been pending for over six months and appellee had not received spousal support from appellant for nearly one year. Furthermore, by his own admission, appellant was aware of his counsel's withdrawal on January 4, 1999, three weeks before the scheduled hearing. Appellant, therefore, had ample time to retain new counsel. The only specific issue raised by the appellant in this assignment of error as to why a continuance was necessary does not involve whether appellant's counsel had time to prepare for the evidentiary hearing. Appellant argued in his brief that a continuance was necessary because appellee continued to refuse to turn over documentation of the garnishment by the IRS of appellee's checking account. But, a close look at this argument shows that the trial court did not abuse its discretion in denying the continuance. In a Judgment Entry filed in the trial court on September 13, 1996, the appellant was found to be in contempt of court for "his failure to hold the [appellee] harmless [from] any liability on the tax debt owed to the Internal Revenue Service." Appellee was "granted a judgment in her favor in the amount of $3,256.32, which sum represents the sum of funds seized through the IRS levy and the amount of [appellee's] income tax refund seized by the IRS." Appellant was sentenced to twenty days in jail which was suspended on the condition appellant pay to appellee the amounts seized by the IRS from appellee. These amounts were to be paid from the sale proceeds of certain specified real estate. On September 11, 1997, the appellant filed a motion in the trial court in which he alleged he had paid appellee the $3,256.32 but IRS records did not indicate that $3,256.32 had been collected from appellee. Appellant alleged that either the IRS records were in error or appellee had "misled the court" when appellee presented evidence on how much the IRS had confiscated from her. On November 11, 1997, an agreed entry of the parties ordered the appellee to produce records from the bank documenting the garnishment of appellee's account by the IRS. Appellant was to pay any charge by the bank for copying and retrieval of these records. On January 28, 1998, appellant filed a contempt motion against appellee alleging appellee had not, inter alia, provided her bank records to appellant. This contempt motion was dismissed without prejudice on June 3, 1998, when appellant failed to appear for the hearing and failed to prosecute his motion. Appellant refiled this contempt motion on July 2, 1998. Appellant wants to receive either a $3,200.00 credit towards his spousal support obligation (if appellee was reimbursed by appellant for funds that appellee claimed were confiscated by the IRS but were not) or to prove to the IRS that appellant's remaining debt to IRS is lower than what IRS' records reflect. What appellant fails to understand is that he is trying to challenge a court order that has already been made but that appellant has never challenged by means of a motion to vacate that prior order. The prior order of the court states that appellant owes appellee $3,256.32 to reimburse appellee for funds of the appellee's that were confiscated by the IRS. Appellant cannot challenge the integrity of that order by trying to claim, in a contempt action against appellant for failure to pay spousal support, that appellant paid appellee pursuant to an incorrect court order and therefore, appellant should receive credit against other obligations appellant owes appellee. Therefore, the trial court did not abuse its discretion by denying appellant's request to continue the contempt hearing when the continuance was sought for purposes of obtaining evidence to attempt to collaterally attack a prior court order. It should also be noted that our finding of no abuse of discretion regarding the denial of the continuance is also based on: 1) the appellant's failure to prosecute his earlier contempt against the appellee regarding her failure to produce records and 2) appellant's ability to still defend against the contempt on inability to pay. Accordingly, for the foregoing reasons, appellant's first assignment of error is overruled.
 II
Appellant, in his second assignment of error, contends that the trial court erred in failing to dismiss appellee's contempt motion. At the January 25, 1999, hearing in this matter, appellant argued that the contempt motion filed by the CSEA on behalf of appellee should be dismissed since appellee had failed to provide appellant with documentation of the alleged garnishment of her bank accounts by the IRS. Appellant specifically argued that, on such basis, "it would be not equitable to have Mrs. Perry [appellee] come in here with unclean hands and request a contempt finding [against appellant] . . ." for failure to pay spousal support. Transcript of Proceedings at 112. While the Magistrate took the motion to dismiss under advisement, he declined to dismiss the CSEA's contempt motion after the evidence was heard. This Court will not reverse the decision of a trial court in a contempt proceeding absent an abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11. We find that the trial court's decision in the case sub judice upholding the Magistrate's denial of appellant's request to dismiss the CSEA's contempt motion did not constitute an abuse of discretion since such decision was not arbitrary, unreasonable or unconscionable. See Blakemore, supra. Appellant, in his brief, states that his argument supporting his second assignment of error is the same argument set forth in his first assignment of error. Therefore, based on the reasoning set forth in the latter part of our discussion of the first assignment of error, we overrule appellant's second assignment of error.
 III
Appellant, in his third assignment of error, asserts that the trial court erred in finding appellant in contempt for failing to pay spousal support. While appellant does not contest that he has failed to pay spousal support to appellee, appellant argues that such failure was a result of appellee's actions. Appellant specifically contends that appellee's failure to negotiate a payment schedule with the IRS and to provide documentation concerning the garnishment of her account by the IRS resulted in the IRS imposing tax levies against appellant's landscaping business. Appellant claims that as a result of the IRS's collection activity, he lost two of his largest customers, making it impossible for him to pay spousal support The Magistrate, in his February 2, 1999, decision that was adopted in relevant part by the trial court, rejected appellant's "clean hands" defense to failing to pay spousal support. Upon our review of the record, we find that the trial court did not abuse its discretion in finding appellant in contempt for failing to pay spousal support since such decision was not arbitrary, unreasonable or unconscionable. There was clear and convincing evidence in the record that appellant rather than appellee failed to negotiate with the IRS regarding setting up a payment schedule. At the January 25, 1999, hearing in the case sub judice, appellant testified that, shortly after the parties' divorce, he contacted Peggy Nypaver with the IRS and "advised her that I needed to set up a payment plan" to repay the money owed by Red's Tree Farm. Transcript of Proceedings at 37. Appellant further testified that he had not contacted anyone at the IRS since such time. In contrast, as the Magistrate noted in his decision, there was evidence in the record that appellee had contacted the IRS by phone on numerous occasions during 1997 and 1998 regarding the tax debt. Moreover, appellee, in February of 1998, completed a power of attorney form which she gave to appellant's attorney giving the IRS approval to discuss a payment plan with appellant and his counsel. Based on the foregoing, and based on our discussion in the first assignment of error regarding the collateral attack on a prior court order, we find that the trial court did not abuse its discretion in finding appellant in contempt for failing to pay spousal support.
 IV
Appellant, in his fourth assignment of error, asserts that the trial court erred when it modified the Magistrate's decision finding appellee in contempt for failure to provide appellant with documents demonstrating the IRS's garnishment of her bank accounts. As is set forth in the facts above, pursuant to an Agreed Entry filed on November 17, 1997, appellee agreed to "produce records from National City Bank documenting the garnishment of her checking account by the IRS." The Agreed Entry further provided that appellant would pay any fees that the bank charged for copying and retrieval of such documents. The Magistrate, in his February 2, 1999, decision, found by clear and convincing evidence that appellee had failed to provide documentation regarding the IRS's garnishment of her bank account and that, therefore, appellee should be held in contempt. In so finding, the Magistrate stated in his decision as follows: "The plaintiff's own testimony establishes that she has not even gone to the bank to locate these items." The Magistrate further noted that he found appellee's argument that she could not afford to pay for the documents unpersuasive since appellee failed to determine whether the documents, in fact, existed. The trial court, in its August 5, 1999 Opinion, declined to find appellee in contempt, holding as follows: ". . . the Court finds that the November 17, 1997, entry concerning the particular paragraph (No. 8) requiring the plaintiff to produce certain bank records is to be interpreted (when read with the rest of the entry) as follows: The plaintiff shall produce records from National City Bank documenting the garnishment of her checking account by the Internal Revenue Service after the defendant notifies her of the number of pages to be copied and tenders to her the full amount to cover the expense of investigating, copying and retrieving those documents. It is ludicrous for the plaintiff to have to continue to expend funds to resolve this issue when defendant is exclusively liable for the debt and defendant shall continue to be in contempt of this Court's order for each and every garnishment initiated by the Internal Revenue Service against any assets, refunds or wages belonging to the plaintiff."
At the January 25, 1999, hearing in this matter, appellee admitted that she never requested documentation from National City Bank regarding the garnishment of her account by the IRS as was required by the parties' November 17, 1997, Agreed Entry. See Transcript of Proceedings at 77-78. However, as is stated above, the trial court, in declining to hold appellee in contempt for the same, interpreted paragraph 8 of the November 17, 1997, Agreed Entry as providing that appellee was not required to produce such documents until after appellant notified appellee of the number of pages to be copied and tendered to her the fees associated with the copying. We find that the trial court, in so holding, abused its discretion since such decision was unreasonable. Specifically, this Court cannot understand how appellant can be expected to know how many pages of documents from appellee's National City Bank account need to be copied to verify the alleged garnishment of such account by the IRS. Appellant's fourth assignment of error is, therefore, sustained. The judgment of the Licking County Court of Common Pleas is affirmed in part and reversed and remanded in part. The trial court is to enter a contempt finding against appellee (regarding appellee's failure to obtain her bank records) and disposition thereto consistent with the recommendations made by the Magistrate on page 6 of his opinion filed on February 2, 1999, in the trial court.
By EDWARDS, P.J. MILLIGAN, V.J. and READER, V.J. concurs